Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WAG ACQUISITION, L.L.C.**, <br><br>                    Plaintiff, <br><br>      v. <br><br> **GAMELINK INTERNATIONAL LIMITED, and** <br> **DOES 1-20**, <br><br>                    Defendants. | Case No.: **2:15-cv-** <br><br> **COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff WAG ACQUISITION, L.L.C., for its complaint against

Defendants, alleges infringement of United States Patent Nos. 8,122,141,

8,327,011, 8,185,611, and 8,364,839 (the "Patents-in-Suit"). Defendants provide

adult-oriented video-on-demand and live webcam programming on the Internet.

Plaintiff alleges that Defendants, operating without authority or license, rely on

Plaintiff's patented streaming technology to conduct this business, thereby

infringing Plaintiff's patents. Plaintiff seeks appropriate compensation for Defendants' infringement.

## THE PARTIES

1.      Plaintiff WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 3 Gold Mine Road, Suite 104, Flanders, New Jersey 07836. Plaintiff operates an Internet broadcasting business based in New Jersey, under the trade name SurferNETWORK.

2.      On information and belief, Defendant GameLink International Limited ("Game Link") is a Bahamian International Business Company with offices at New Providence Financial Center, Suite 1000, in Nassau, Bahamas.

3.      On information and belief, Defendants DOE 1 – DOE 20 (the "Doe Defendants") are individuals or entities whose precise identities are unknown to Plaintiff at this time, which operate in concert with and/or under the direction and control of Defendant Game Link in connection with the conduct complained of herein.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b), in that, *inter alia* (as hereinafter alleged in detail), a substantial part of

the events or omissions giving rise to the claims herein occurred in New Jersey; Game Link is an entity with the capacity to sue and be sued in its common name under applicable law and subject to the personal jurisdiction of this Court with respect to the matters in dispute in this action; and Game Link is a nonresident of the United States and may be sued in any district.

## PLAINTIFF'S BUSINESS AND DEVELOPMENTS

6.     Plaintiff, operating under the trade name SurferNETWORK, is in the business of providing Internet broadcasting services for live and on-demand audio and video program material. Plaintiff began this business in 1998 and has been one of the leading providers of such services to the terrestrial radio stations and other content providers that comprise its customer base.

7.     Early in developing its business, two of Plaintiff's principals, William A. Grywalski, ("Grywalski") and Harry Emerson ("Emerson"), recognized a need that existed in the field of Internet delivery of broadcast media due to the shortcomings in then-current Internet streaming technologies. They observed that long startup delays due to "buffering" and frequent program interruptions (sometimes referred to as "jitter") made the experience of trying to listen to or view streaming Internet content frustrating to the end user, and therefore impractical as a content delivery mechanism. They were interested in making the Internet streaming experience more like radio or television, including the immediacy of having the programming appear to start instantly on demand (*e.g.*,

turning on a radio or flipping channels), and continue playing once started without random interruptions.

8.     Plaintiff engaged the assistance of a software design engineer, Harold Price ("Price"), to develop solutions for the shortcomings that Grywalski and Emerson saw in the current technology, with respect to streaming media playback performance, as well as other technological issues concerning Internet delivery of broadcast media. Price worked on several aspects of this matter for Plaintiff over the period 1999-2001.

9.     Price was aware of the then current approach to streaming, which attempted to overcome streaming transmission delays and jitter by a variety of techniques, including, for example, establishing a content buffer of 20-seconds or so in duration, on the receiving (user or "client") end of the communication, within the client's media player or media player browser plugin. After the user selected (*e.g.*, clicked on) a stream, the player would start filling this buffer at the playback rate and then start playing when the buffer was full. While this method did provide some protection against interruptions for the duration of whatever content was initially buffered, it entailed an undesirable startup delay for "buffering" and provided no means for graceful recovery once the 20 seconds worth of content in the buffer was consumed.

10.     Price conceived of solutions to these problems. He built a prototype that implemented one embodiment of those solutions, and he demonstrated that a

system according to his new design could overcome the problems put to him by Grywalski and Emerson.

11. Plaintiff and its predecessors in interest filed a number of U.S. patent applications on these solutions, as enumerated below. To date, these applications have resulted in a number of issued U.S. patents, including the Patents-in-Suit. All of these patent applications were assigned to Plaintiff, or to a predecessor-in-interest of Plaintiff and reassigned to Plaintiff.

12. Plaintiff has been conducting an active, operating business ever since the developments described above and has actively practiced under the technology taught in the Patents-in-Suit from then to the present. Plaintiff has developed commercial arrangements under which it streams content for numerous terrestrial radio stations and content providers in New Jersey, regionally, nationally, and internationally. It also provides a One-Click Royalty Reporter<sup>TM</sup> for radio stations to report streaming media performance royalty information to SoundExchange (a performing rights organization that collects royalties on the behalf of sound recording copyright owners ), among other services.

## DEFENDANTS' BUSINESS ACTIVITIES

13. The time period relevant to the patent infringement alleged herein runs from at least as early as February 21, 2012, the date that the first of the Patents-in-Suit issued from the United States Patent & Trademark Office, to the present. (Plaintiff further reserves the right to allege infringement of its other patents, and to allege infringement of its provisional patent rights under 35 U.S.C.

§ 154(d), as information developed in discovery in this case may warrant.) Thus, all conduct of the Defendants during said period is relevant to determining their liability and financial responsibility for infringing the Patents-in-Suit. The allegations of Defendants' conduct herein should accordingly be understood to refer to conduct and courses of conduct occurring, continued, and/or repeated in whole or in part within said period.

### A. Defendants' Business

14.     Defendant Game Link operates and, during the relevant period, has operated a network of adult entertainment sites, led by Defendants' flagship site gamelink.com, which provide video-on-demand services and videos of live webcam performances, by streaming over the Internet.

15.     Game Link provides access to pre-recorded adult content on a per minute basis, where users can buy credit for a number of minutes, the credit being stored on the user's Game Link account. The user can then view portions of videos, with each minute of video viewed counted against the number of credit minutes stored in the user's account. There are also options to pay for whole videos. Users can also pay to interact with webcam performers.

### B. Defendants' Internet Streaming Operations

16.     Game Link's business and competitive position has been and continues to be critically dependent on streaming performance, including fast startup times when a user clicks on a stream, and smooth and uninterrupted delivery when the streaming delivery starts.

17.     To achieve these performance requirements for its business, Game Link has used, and on information and belief, continues to use, at least one streaming media server situated within the United States, configured and operated in a manner that infringes the Patents-in-Suit, as hereinafter set forth. Game Link uses Plaintiff's patented technologies to achieve the high streaming performance required in order to be competitive in the market.

18.     Game Link's services on the Internet are provided by computers, referred to as "servers." Each such server is reachable over the Internet by its "address" on the Internet, referred to as its Internet Protocol (IP) address. Every device publicly accessible on the Internet has its own globally unique (*i.e.*, non-duplicated) IP address.

19.     Internet domain names and IP addresses are given out generally in "blocks" of multiple adjacent addresses, by a process that involves registration with accredited registrars.

20.     A given IP address will be assigned to a registrant at a listed business address, use of the IP address is not tied to the location of the registrant's business address. The registrant can locate its servers anywhere it wishes, geographically, and use the IP addresses it owns (or rents) to identify those servers on the Internet. IP addresses are represented as a four-part string of numbers, in the format of four numbers, each in the range 0-255, separated by dots – as in, for example, 192.22.245.2 – resembling a telephone number. To make the Internet addressing system more user-friendly, the numeric IP addresses are often given names

("domain names"), such as google.com or ebay.com, so that users can reach the desired services by a memorable name, rather than a number (*e.g.*, www.google.com as opposed to 74.125.228.80). An Internet mechanism called the Domain Name Service (DNS) maps the domain names to the numeric IP addresses of the machines that serve content for the domains, so that the requests directed to domain names (*e.g.*, google.com) will reach the proper numerical IP addresses (in this example, 74.125.228.80), and thereby the proper servers. "Subdomains" may also be assigned within individual domains, for example, www.google.com, mail.google.com, voice.google.com, etc. Each subdomain represents a different server reachable through the main domain (google.com), but mapped to a separate IP address. (That is, the subdomain mail.google.com (aka "gmail") maps to 74.125.228.246, as opposed to the 74.125.228.80 address for main google.com search engine site.)

21.     The domain name "gamelink.com" is registered to Game Link.

22.     Game Link is the owner of several U.S. trademarks including a registration for the word mark "GameLink" for products and services in various categories including "On-line retail store services featuring downloadable pre-recorded music and video."

23.     Game Link is listed as the copyright owner on both the gamelink.com site and the "mobile site" at www.gamelink.com/m/main, with the same copyright notice on both, "© 1997-2015 Game Link International Limited. All rights reserved."

24.     The accused infringing video for some of Defendants' offerings is served from the IP address 208.185.30.31, situated at a location in the United States.

25.      User playback devices for streaming media ("Players") can include, *inter alia*, desktop computer Internet browsers, Internet browsers on smartphones and tablets, and dedicated media players and media player facilities on mobile, desktop, and other platforms.

26.     Where the user is using certain types of mobile Players (*e.g.*, iOS, Android 4.4 or higher), or certain browsers having corresponding capabilities (*e.g.*, Safari, mobile Chrome browser), the stream will be served via the "HTTP" protocol (Hypertext Transfer Protocol) (such servers being referred to herein as "Pull Servers"). These streams are served in a manner that directly infringes (and also induces infringement of) Plaintiff's '141 and '011 patents as alleged in Counts I - IV below.

27.     In addition to the infringement committed directly by Game Link when it operates the gamelink.com web site, the accused gamelink.com web site further provides a link, labeled "Video Chat," to another infringing site.

28.     The "Video Chat" link on the gamelink.com web site directs gamelink.com users to another interactive adult webcam site, called "gamelinklive.com," resulting in further infringement.

29.     The gamelinklive.com web site serves live webcam video to desktop Players from servers in the United States via the RTMP protocol ("RTMP

Servers") in a manner that infringes Plaintiff's '611 and '839 patents as alleged in Counts V-VI below.

30.     The gamelinklive.com web site serves live webcam video to mobile Players from Pull Servers in the United States in a manner that infringes Plaintiff's '141 and '011 patents as alleged in Counts I-IV below.

31.     On information and belief, Game Link derives substantial revenue from driving web traffic to gamelinklive.com from the Video Chat link on gamelink.com.

32.     Through the Video Chat link on gamelink.com, Game Link encourages users to visit the gamelinklive.com web site.

33.     Game Link knows of Plaintiff's patents, and knows that the gamelinklive.com web site is operated in a manner that infringes said patents.

**C. Game Link's Contacts with New Jersey**

34.     The revenue derived by Game Link from its infringing activities includes substantial dollars of revenues from monies spent on Game Link's web sites by New Jersey residents.

35.     Game Link regularly solicits customers in New Jersey and has paying customers in New Jersey.

36.     Game Link does not merely make static web pages generally available over the Internet to users in unspecified locations who happen upon its site. Rather, Game Link's contacts with its users are interactive and purposeful.

37.     The gamelink.com web site, for example, provides a facility for users to "join" the site and become "members." The add credit card page provides a drop-down menu, in which "New Jersey" is pre-populated as a state of residence that the user may choose, reflecting purposeful solicitation of users from New Jersey.

38.     This complaint, at paragraphs 47-99 *infra*, alleges both direct and induced infringement by Defendants, carried out through the use of Players. For every New Jersey user of the infringing streams, the resulting direct infringement by Defendants and underlying direct infringement by such users takes place in New Jersey. Because Game Link has a substantial volume of users in New Jersey, Game Link accordingly causes a substantial amount of infringement to occur in New Jersey.

## THE PATENTS-IN-SUIT

39.     The Patents-in-Suit comprise the following United States Patents, which were duly and legally issued on the dates indicated:

| Pat. No. | Issued | Title | Reference |
|----------|--------|-------|-----------|
| 8,122,141 | Feb. 21, 2012 | STREAMING MEDIA BUFFERING SYSTEM | '141 patent |
| 8,327,011 | Dec. 4, 2012 | STREAMING MEDIA BUFFERING SYSTEM | '011 patent |
| 8,185,611 | May 22, 2012 | STREAMING MEDIA DELIVERY SYSTEM | '611 patent |
| 8,364,839 | Jan. 29, 2013 | STREAMING MEDIA DELIVERY SYSTEM | '839 patent |

40.     The Patents-in-Suit were developed in the course of Plaintiff's business and were assigned by Price (the inventor) to Plaintiff's predecessors in that business, which reassigned them to Plaintiff, the current operator of the business. Plaintiff owns all rights to recover for past and ongoing infringement of the Patents-in-Suit.

41.     The text of the claims of each of the Patents-in-Suit is incorporated herein by reference. Any descriptive matter contained herein that references said claims is provided for purposes of explanation and notice and does not limit the scope of the claims.

### Notice of the Patents-In-Suit and Infringement Thereof

42.     On May 1, 2015, prior to commencement of this action, Plaintiff sent Game Link a letter identifying the Patents-in-Suit and describing how Game Link's web sites infringed certain claims of the Patents-in-Suit. Game Link has been aware of the Patents-in-Suit and of its infringement thereof at least as early as receipt of said letter.

43.     In addition, on March 15, 2015, Plaintiff sent a letter to Game Link LLC, a San Francisco based company believed to be an affiliate of Game Link, identifying the Patents-in-Suit and describing how Game Link's web sites infringed certain claims of the Patents-in-Suit. Game Link should have been aware of the Patents-in-Suit and of their infringement thereof at least as early as receipt of said March 15, 2015 letter.

**44.**     On information and belief it has been widely known in the online adult video industry since March 2014 that WAG has filed suits against online adult video companies, and on that basis Game Link would have been aware of WAG's patents and Game Link's infringement thereof prior to receipt of WAG's March 11, 2015 and May 1, 2015 letters.

**45.**     Further, all Defendants herein have notice of the Patents-in-Suit, and of their manner of infringement thereof, by reason of the filing of this Complaint on May 18, 2015.

**46.**     The earliest date by which Defendants had notice of the Patents-in-Suit and of their infringement thereof is herein referred to (separately as to each Defendant and each patent, to the extent if any that different Defendants may have received such notice on different dates, or notice with respect to different patents on different dates) as the "Notice Date."

## COUNT I: DIRECT INFRINGEMENT OF THE '141 PATENT

**47.**     Plaintiff repeats and realleges the allegations of paragraphs **1- 46** above as if fully set forth at length herein.

**48.**     35 U.S.C. § 271(a) provides in pertinent part as follows:

> "(a) . . . whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

**49.**     Defendants, acting individually as well as in their respective roles as alleged above, have directly infringed and are still directly infringing each and every claim of the '141 patent by making, selling, offering to sell, performing, and using apparatus and methods that embody one or more of said claims, by conduct including without limitation the acts alleged in the paragraphs that follow.

**50.**     The patent claims that Defendants are accused of directly infringing in this Count I and in Count III are each of a nature that, in each case, may be infringed by the acts of a single actor. Plaintiff alleges that one or more of the Defendants commit such direct infringement as a result of their operating one or more of the RTMP and Pull Servers referenced herein. The alleged direct infringement is carried out in some circumstances by one or more Defendants acting completely on their own, and in other circumstances in whole or in part as a result of one or more Defendants directing and controlling (and thereby causing) the infringing conduct of others. These circumstances include (i) where one or more Defendants (or employees, agents, or contractors under their direction and control) performs all method steps or makes or uses apparatus (*i.e.*, a server) or an article of manufacture (*i.e.*, recorded software) covered by a patent claim, or (ii) where one or more Defendants exercises direction and control causing another person (*e.g.*, a user) to use apparatus (*i.e.*, a Player) or an article of manufacture (*i.e.*, recorded Player Software) covered by a patent claim. In either scenario, the entire direct infringement is attributable to the acts of one single Defendant (or at

most one group of related Defendants acting under control of a "mastermind," *i.e.*, Game Link), responsible for operating the relevant server.

51.     As alleged above, Defendants provide their services through a large Internet server infrastructure, at least a material portion of which is located in the United States. Defendants' direct infringement of the '141 patent results from the operation of the Pull Servers, referenced above, which serve the content for Defendants' accused infringing web sites. Such infringement results because, *inter alia*, claims 10-18 and 19-23 of the '141 patent read on the Pull Servers and their software, and Defendants make and use those servers and their software.

52.     More particularly, Defendants' Pull Servers include servers that use the same "divide and conquer" approach described in the '141 patent to deliver streaming data. Defendants' Pull Servers, *inter alia*, assign serial identifiers to sequential media data elements comprising the stream. The Pull Servers receive, from a user system, requests for these elements specifying the identifiers. The Pull Servers then serve the elements responsive to the requests, at a rate more rapid than the rate at which said streaming media is played back by a user. This mechanism provides for a fast start of streaming playback, and at the same time allows the Player to moderate media flow by "pulling" data as needed, based on its own rate of consuming content. Defendants' Pull Servers meet each and every limitation of claims 10-18 of the '141 patent and are therefore infringing. By operating such Pull Servers, Defendants, by their actions alone, directly infringe claims 10-18 of the '141 patent.

**53.**     Claims 19-23 of the '141 patent concern recorded computer software that runs servers such as Defendants' accused Pull Servers. The software that operates Defendants' Pull Servers meets each and every limitation set forth in claims 19-23 of the '141 patent and is therefore infringing. By operating said servers, and thereby using such computer programs, Defendants, by their actions alone, directly infringe claims 19-23 of the '141 patent. On information and belief, Defendants also "make" such software and directly infringe for that reason also.

**54.**     Claims 1-9 and 28 of the '141 patent concern (i) providing a Pull Server essentially as described above, as well as (ii) providing software ("Player Software") to implement specified functionality of a Player. Defendants provide Pull Servers that meet the first set of requirements recited in these claims. Through such servers, in response to requests identified by the server as having come from certain types of Players, Defendants direct and control the Players (as further alleged below) to provide Player Software in accordance with the second set of requirements recited in these claims. The combination of Defendants' actions in operating the servers and in Defendants' directing and controlling Players to provide Player Software make Defendants responsible for all claimed method steps and therefore for directly infringing claims 1-9 and 28 of the '141 patent.

**55.**     More particularly, Defendants, through their Pull Servers, direct and control users' Players as alleged in paragraph **54** by, including without limitation, the following acts. Defendants' servers read encoded information in network packets received from Players and identify the type of Player that sent the packet.

When Defendants identify a Player as compatible with Defendants' video stream, Defendants' servers send such Players electronic instructions that cause the Players, without any user intervention, to load and execute the Player Software (thereby putting the Players and Player Software into service), so that the Player may then request and receive the serialized streaming transmissions from Defendants' servers. Defendants' servers also send electronic data to the Players containing the serial identifiers used by the Players to request streaming media elements, thereby further controlling the operation of the Players.

56.     Further in the alternative, and without limiting any of the foregoing allegations, Defendants also directly infringe claims 1-9 and 28 of the '141 patent under 35 U.S.C. § 271(a) by Defendants' acts combined with those of their users, with knowledge that each step of said patented methods will be performed through the combined action of Defendants and the user.

57.     Claims 24-27 of the '141 patent concern Player Software. Defendants directly infringe claims 24-27 of the '141 patent by (i) using (as alleged below) the Player Software claimed in said claims, which Plaintiff alleges meets each and every limitation set forth in said claims and is infringing, and (ii) by directing and controlling (as further alleged below) users' use of such infringing Player Software.

58.     Defendants use infringing Player Software and thereby directly infringe claims 24-27 of the '141 patent by putting the Player Software into service by the acts alleged in paragraph **54** and making beneficial use of the Player

Software by using the Player Software as part of a delivery mechanism whereby Defendants deliver their streaming video content to end users through the users' Players.

59.     In the alternative, and without limiting the foregoing, Defendants also directly infringe claims 24-27 of the '141 patent by directing and controlling users' Players to use infringing Player Software in the manner alleged in paragraph **54**.

60.     Plaintiff is entitled to recover all past, present, and ongoing damages it has sustained as a result of Defendants' direct infringement of the '141 patent.

61.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by the Defendants under the '141 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT II: INDUCED INFRINGEMENT OF THE '141 PATENT

62.     Plaintiff repeats and realleges the allegations of paragraphs **1-61** above as if fully set forth at length herein.

63.     35 U.S.C. § 271(b) provides:

"Whoever actively induces infringement of a patent shall be liable as an infringer."

64.     In addition and in the alternative to Plaintiff's allegations of direct infringement of claims 24-27 of the '141 patent, and without limiting anything alleged in connection therewith, Plaintiff alleges that Defendants, by conduct more

particularly alleged in the paragraphs that follow, also actively induce infringement, by users, of claims 24-27 of the '141 patent.

65.     The relevant "direct infringement" for purposes of this Count II and Count IV is direct infringement by consumers (users), who infringe by using Player Software (Count II) and/or Players (Count IV). Plaintiff further alleges that it requires only one user to "use" the Player Software, and to "use" Players, as the same are claimed in the corresponding claims of the Patents-in-Suit (*i.e.*, claims 24-27 of the '141 patent and claims 1-4 of the '011 patent).

66.     Defendants' induced infringement as alleged in this Count II and in Counts IV results from numerous different actions by one or more Defendants that each induce users to directly infringe. The basis for liability of the respective Defendants herein for such indirect infringement is substantially as alleged in paragraph **50**. Further, because knowledge of Plaintiff's patents and intent to induce infringement results, *inter alia*, from matters that have been brought to each Defendants' attention by the various forms of notice alleged in paragraphs **42-46**, Plaintiff alleges that each Defendant is equally chargeable with such knowledge and intent.

67.     The Player Software meets each and every limitation of claims 24-27 of the '141 patent, and is therefore infringing. When users use the infringing Player Software, each such user, considering only his or her acts alone, puts the Player Software, as claimed, into service, and obtains its beneficial use, thereby directly infringing claims 24-27 of the '141 patent.

**68.** Defendants actively induce such direct infringement by users in a number of ways, including without limitation the following acts. Defendants, through their Pull Servers, as aforesaid, provide to users video streams that are specially adapted to be viewed on Players running compatible Player Software, thereby inducing users to use such Players and such software. Defendants' Pull Servers provide such streams when they identify that the user is using compatible Player Software. These streams provide a superior viewing experience that further induces the user to use Players running such Player Software when they use Defendants' service. Defendants' Pull Servers send electronic instructions causing the Players to load and execute compatible Player Software, and electronic data containing the serial identifiers for the Players to use to request sequential media data elements.

**69.** Defendants, through their servers hosting the gamelink.com web page, also provide a "mobile site" at www.gamelink.com/m/main, to further induce users to use infringing Players and Player Software. Game Link provides links on its desktop site to its mobile site to encourage users to use the mobile site. Gamelink also detects the user's Player to automatically redirect mobile devices to the mobile site.

**70.** The users of compatible Players are thereby induced by Defendants to directly infringe claims 24-27 of the '141 patent (*e.g.*, by using Player Software within the scope of said claims, whereby said users directly infringe such claims as aforesaid).

71.     Game Link further encourages users to access an infringing webcam Pull Server by providing a "Video Chat" link on the gamelink.com web site, directing the user to an the infringing Pull Server, and thereby causing execution of Player Software in accordance with claims 24-27 of the '141 patent and use of a server and server software in accordance with claims 10-18 and 19-23 of the '141 patent. Said users thereby directly infringe claims 24-27 of the '141 patent and the operator of the webcam server thereby directly infringes claims 10-18 and 19-23 of the '141 patent. Said inducement by Game Link as aforesaid is conducted with knowledge of the '141 patent and of the manner of said users' and said operator's infringement thereof.

72. The '141 patent is presumed valid pursuant to 35 U.S.C. § 282, and therefore presumed to contain an enabling disclosure of the matter claimed therein (pursuant to 35 U.S.C. § 112), understandable to any person of ordinary skill in the art. On information and belief, Defendants have personnel of such a skill level in their employ or under their direction or control, in the subject matter areas in which Defendants are alleged to be infringing, and therefore should be expected to understand what is claimed in the '141 patent.

73.     As a consequence of the foregoing, since at least as early as the Notice Date, Defendants have engaged in such inducement with knowledge of the '141 patent; with knowledge that users' Players use Player Software meeting the limitations of claims 24-27 of the '141 patent; with knowledge that the users directly infringe claims 24-27 of the '141 patent when they use Player Software;

with knowledge of how Defendants' conduct actively induces users to use infringing Player Software and thereby infringe the '141 patent; and with the specific intent to cause such infringement, knowing that the users' acts constitute direct infringement of the '141 patent.

74.     Defendants knew or should have known that their Pull Server configurations, the Player detection mechanisms built into their Pull Servers, their redirection of requests to servers compatible with the detected Player, their setting up of separate web sites for certain Players, and their providing instructions suggesting that users use such Players, were all serving to induce users of their streaming services to use Players and Player Software, and indeed were designed for the purpose of doing so.

75.     Defendants knew or should have known that the users' use of Player Software infringes the '141 patent. Defendants knew or should have known of such infringement because they know the Player platforms that they support, know that the Players are computers or "embedded devices" driven by software (*i.e.*, Player Software), and know that the supported Players ***must*** incorporate Player Software that operates in the manner claimed in the '141 patent in order to be interoperable with Defendants' Pull Servers.

76.     Defendants knew or should have known how the Players they specifically elected to support functioned, because they designed or selected Pull Servers specifically to support those Players. Defendants knew or should have known that, in order to work with Defendants' Pull Servers, the Players they

elected to support **must** request the media data elements comprising the program stream by their serial numbers; maintain a record of what the Player has already received; and keep requesting the media data elements to maintain a sufficient number of them in the Player's buffer until the entire program has been received. Since the foregoing reflects each and every limitation concerning Player Software in the claims of the '141 patent, anyone of ordinary skill in the art, including Defendants and their personnel, should readily have understood that Game Link's users directly infringed by using Players and Player Software in the manner induced by Defendants by and in connection with their Pull Servers.

77.     Plaintiff is entitled to recover all damages it has sustained since at least as early as the Notice Date, and all such ongoing damage, as a result of Defendants' induced infringement of the '141 patent.

78.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for Defendants' induced infringement of the '141 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT III: DIRECT INFRINGEMENT OF THE '011 PATENT

79.     Plaintiff repeats and realleges the allegations of paragraphs **1-78** above as if fully set forth at length herein.

80.     Defendants, acting individually, as well as in their respective roles as alleged above, have directly infringed and are still directly infringing claims 1-4 of

the '011 patent by using Players that embody one or more of said claims, by conduct including without limitation the acts alleged in the paragraphs that follow.

81.    Defendants infringe such claims directly, (i) by using said Players, which Plaintiff alleges meet each and every limitation set forth in said claims and are infringing, and (ii) independently of the infringement that exists as a result of such use, by directing and controlling users' use of such infringing Players.

82.    Defendants use infringing Players and thereby directly infringe claims 1-4 of the '011 patent by putting the Players into service by the acts alleged in paragraph **55** and making beneficial use of the Players by making the Players part of a delivery mechanism whereby Defendants deliver their streaming video content to end users.

83.    Defendants direct and control users' Players by, including without limitation, the following acts. Defendants' Pull Servers read encoded information in network packets received from Players and identify the type of Player that sent the packet. When Defendants identify a Player as compatible with Defendants' video stream, Defendants' Pull Servers send such Players electronic instructions that cause the Players, without any user intervention, to load and execute the Player Software (thereby putting the Players and Player Software into service), so that the Player may then request and receive the serialized streaming transmissions from Defendants' Pull Servers. Defendants' servers also send electronic data to the Players containing the serial identifiers used by the Players to request streaming media elements, thereby further controlling the operation of the Players.

**84.**     Plaintiff is entitled to recover all past, present, and ongoing damages it has sustained as a result of Defendants' direct infringement of the '011 patent.

**85.**     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by the Defendants under the '011 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT IV: INDUCED INFRINGEMENT OF THE '011 PATENT

**86.**     Plaintiff repeats and realleges the allegations of paragraphs **1-85** above as if fully set forth at length herein.

**87.**     In addition and in the alternative to Plaintiff's allegations of direct infringement of claims 1-4 of the '011 patent, and without limiting anything alleged in connection therewith, Plaintiff alleges that Defendants, by conduct more particularly alleged in the paragraphs that follow, also actively induce infringement, by users, of claims 1-4 of the '011 patent.

**88.**     The users' Players meet each and every limitation of claims 1-4 of the '011 patent, and are therefore infringing. Plaintiff alleges that it requires only one user to "use" a Player, as the same is claimed in claims 1-4 of the '011 patent. When users use infringing Players, each such user, considering only his or her acts alone, puts the Player, as claimed, into service, and obtains its beneficial use, thereby directly infringing claims 1-4 of the '011 patent.

89.     Defendants actively induce such direct infringement by users in numerous of ways, including without limitation, the following acts. Defendants, through their Pull Servers, as aforesaid, provide to users video streams that are specially adapted to be viewed on Players running compatible Player Software, thereby inducing users to use such Players. Defendants' Pull Servers provide such streams when they identify that the user is using a compatible Player. These streams provide a superior viewing experience that further induces the user to use such Players when they use Defendants' service. Defendants' Pull Servers send electronic instructions causing the Players to load and execute compatible Player Software, and electronic data containing the serial identifiers for the Players to use to request sequential media data elements.

90.     In addition, Game Link further encourages users to access an infringing webcam Pull Server by providing a "Video Chat" link on the gamelink.com web site, directing the user to an the infringing Pull Server, and thereby causing users to use Players in accordance with claims 1-4 of the '011 patent. The users thereby directly infringe claims 1-4 of the '011 patent. Game Link's inducement as aforesaid is conducted with knowledge of the '011 patent and of the manner of said users' infringement thereof.

91.     Defendants, through their primary web page servers, also provide a "mobile site" at www.gamelink.com/m/main, to further induce users to use infringing Players and Player Software. Game Link was nominated for an award by XBIZ, the adult industry news, for Mobile Site of the Year in 2013.

-26-

**92.**    The users of such Players are thereby induced by Defendants to directly infringe claims 1-4 of the '011 patent (*e.g.*, by using Players within the scope of said claims, whereby said users directly infringe such claims as aforesaid).

**93.**    The '011 patent is presumed valid pursuant to 35 U.S.C. § 282, and therefore presumed to contain an enabling disclosure of the matter claimed therein (pursuant to 35 U.S.C. § 112), understandable to any person of ordinary skill in the art. On information and belief, Defendants have personnel of such a skill level in their employ or under their direction or control, in the subject matter areas in which Defendants are alleged to be infringing, and therefore should be expected to understand what is claimed in the '011 patent.

**94.**    As a consequence of the foregoing, since at least the Notice Date, Defendants have engaged in such inducement with knowledge of the '011 patent; with knowledge that users' Players use Player Software meeting the limitations of claims 1-4 of the '011 patent; with knowledge that the users directly infringe claims 1-4 of the '011 patent when they use Player Software; with knowledge of how Defendants' conduct actively induces users to use infringing Players and thereby infringe the '011 patent; and with the specific intent to cause such infringement, knowing that the users' acts constitute direct infringement of the '011 patent.

**95.**    Defendants knew or should have known that their Pull Server configurations, the Player detection mechanisms built into their servers, their

redirection of requests to servers compatible with the detected Player, their setting up of separate web sites for certain Players, and their providing instructions suggesting that users use such Players, were all serving to induce users of their streaming services to use Players and Player Software, and indeed were designed for the purpose of doing so.

96.    Defendants knew or should have known that the users' use of Players infringes the '011 patent. Defendants knew or should have known of such infringement because they know the Player platforms that they support, and know that the supported Players *must* operate in the manner claimed in the '011 patent in order to be interoperable with Defendants' Pull Servers.

97.    Defendants knew or should have known how the Players they specifically elected to support functioned, because they designed or selected their Pull Servers specifically to support those Players. Defendants knew or should have known that, in order to work with Defendants' servers, the Players they elected to support *must* request the media data elements comprising the program stream by their serial numbers; maintain a record of what the Player has already received; and keep requesting the media data elements to maintain a sufficient number of them in the Player's buffer until the entire program has been received. Since the foregoing reflects each and every limitation concerning Players in the claims of the '011 patent, anyone of ordinary skill in the art, including Defendants and their personnel, should readily have understood that Game Link's users directly

infringed by using Players in the manner induced by Defendants by and in connection with their Pull Servers.

98.     Plaintiff is entitled to recover all damages it has sustained since at least as early as the Notice Date, and all such ongoing damage, as a result of Defendants' induced infringement of the '011 patent.

99.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by the Defendants under the '011 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT V: INDUCED INFRINGEMENT OF THE '611 PATENT

100.     Plaintiff repeats and realleges the allegations of paragraphs **1-99** above as if fully set forth at length herein.

101.     The operators of the gamelinklive.com web site have directly infringed and are still infringing the '611 patent by making and operating RTMP servers in a manner that infringes the '611 patent.

102.     Among the servers that said operators operate are RTMP Servers that employ the buffering (temporary storage) scheme claimed in the '611 patent, to control transmission of streaming media to achieve fast startup of the playback and rapid recovery from interruptions. Those servers send initial streaming media elements to Players at an initial sending rate more rapid than the playback rate of the media stream to fill a buffer in the user's Player, and thereafter send further

streaming media data elements to the Player at about the playback rate. Said operators' RTMP Servers perform these functions in a manner that meets each and every limitation of one or more claims of the '611 patent. Defendants, by using and operating, and on information and belief, making, such RTMP Servers, directly infringe the '611 patent.

103.   Plaintiff alleges that the methods for distributing streaming media as claimed claim 1 of the '611 patent and its dependent claims can be infringed by one actor, and that said operators perform all of the acts of said one actor necessary to infringe each of said claims.

104.   Defendants have had notice of the Patents-in-Suit and of the manner of said operators' direct infringement thereof, since at least the Notice Date.

105.   Defendants, by means including without limitation the "Video Chat" link on their gamlink.com website, have encouraged users of the gamelink.com web site to use the gamelinklive.com web site, inducing infringement of the '611 patent by said operators. Defendants have done so for financial gain and with the knowledge and intent that that such use of the web site gamelink.live.com is infringing.

106.   Plaintiff is entitled to recover all past and continuing damages from and after the Notice Date so sustained by Plaintiff as a result of such infringement.

107.   Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by the Defendants under the '611 patent, in an

amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT VI: INDUCED INFRINGEMENT OF THE '839 PATENT

**108.**   Plaintiff repeats and realleges the allegations of paragraphs **1-107** above as if fully set forth at length herein.

**109.**   The operators of the gamelinklive.com web site have directly infringed and are still infringing the '839 patent by making and operating RTMP servers in a manner that infringes the '839 patent.

**110.**   Among the servers that said operators operate are RTMP Servers that employ the buffering (temporary storage) scheme claimed in the '839 patent, to control transmission of streaming media to achieve fast startup of the playback and rapid recovery from interruptions. Those servers send initial streaming media elements to Players at an initial sending rate more rapid than the playback rate of the media stream to fill a buffer in the user's Player, and thereafter send further streaming media data elements to the Player at about the playback rate. Said operators' RTMP Servers perform these functions in a manner that meets each and every limitation of one or more claims of the '839 patent. Defendants, by using and operating, and on information and belief, making, such RTMP Servers, directly infringe the '839 patent.

111.   Plaintiff alleges that the methods for distributing streaming media as claimed in the '839 patent can be infringed by one actor, and that said operators perform all of the acts of said one actor necessary to infringe each of said claims.

112.   Defendants have had notice of the Patents-in-Suit and of the manner of said operators' direct infringement thereof, since at least the Notice Date.

113.   Defendants, by means including without limitation the "Video Chat" link on their gamlink.com website, have encouraged users of the gamelink.com web site to use the gamelinklive.com web site, inducing infringement of the '839 patent by said operators. Defendants have done so for financial gain and with the knowledge and intent that that such use of the web site gamelink.live.com is infringing.

114.   Plaintiff is entitled to recover all past and continuing damages from and after the Notice Date so sustained by Plaintiff as a result of such infringement. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by the Defendants under the '839 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT VII: WILLFUL INFRINGEMENT

115.   Plaintiff repeats and realleges the allegations of paragraphs **1-114** above as if fully set forth at length herein.

116.   35 U.S.C. § 284 provides in pertinent part as follows:

"When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."

117.   35 U.S.C. § 285 provides as follows:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

118.   From at least the Notice Date, Defendants knew of Plaintiff's patents and therefore, as alleged in paragraphs **74** and **95,** knew or should have known what the claims of those patents covered, and knew or should have known that their own activities as alleged herein created an objectively high likelihood of infringement of valid patents. Further, as alleged in paragraphs **74-76** and **95-97**, Defendants knew or should have known that they were inducing their users to infringe Plaintiff's patents.

119.   Notwithstanding possession of such knowledge, Defendants have continued their infringing conduct without modification or moderation, without compensation to Plaintiff, and without any legal justification, thereby demonstrating their indifference to legal obligations and the property rights of others, and their reckless disregard for Plaintiff's patents and/or their intentional infringement thereof.

120.   Defendants' continued infringement since at least the Notice Date is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. § 284.

**121.** Defendants' continued reckless or intentional infringement since at least the Notice Date renders this an extraordinary case under 35 U.S.C. § 285, which entitles Plaintiff to an award of reasonable attorneys' fees.

**122.** Plaintiff has no available injunctive remedy at this time to mitigate Defendants' continuing willful infringement. Plaintiff provides a "business-to-business" (B2B) service to content providers, and in particular radio station operators, whereas Defendants operate as direct content providers for users or "business-to-consumer" (B2C) services. Accordingly, despite a high probability of success on the merits, the non-competitive current positioning of the parties cuts against the availability of preliminary injunctive relief, not because of any shortcomings on the merits, but rather because of factors concerning irreparable harm unrelated to the merits. Plaintiff thus lacks an adequate remedy by way of a preliminary injunction to prevent ongoing willful infringement by the Defendants. Not imposing liability for willful infringement for the Defendants' continuing infringing conduct would allow Defendants to continue and keep expanding their knowing, intentional infringement with impunity, at no additional cost, and would be unjust.

## DEMAND FOR JURY TRIAL

**123.** Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff WAG ACQUISITION, L.L.C. demands judgment in its favor and against Defendants as follows:

a) Declaring that each of the Defendants has and/or continues to directly infringe and/or induce infringement of one of more claims of United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839;

b) Declaring that each of Defendants' infringement has been willful, and awarding enhanced damages at least from the Notice Date as a result of that willfulness under 35 U.S.C. § 284, jointly and severally against the Defendants;

c) Awarding the past and continuing damages arising out of Defendants' direct infringement of United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839, and damages at least from the filing of this action and/or receipt of the Demand Letter for Defendants' indirect infringement as alleged herein, to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof, jointly and severally against the Defendants;

d) Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, jointly and severally against the Defendants;

e) Upon the final judgment of infringement herein, entering an order, pursuant to 35 U.S.C. § 283, permanently enjoining and restraining Defendants and their respective officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with each of

the foregoing, from infringing, and/or inducing the infringement of, any claims of United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839;

f) Awarding costs in this action to Plaintiff; and

g) For such other and further relief as the Court may deem just and proper.

Dated: May 18, 2015            **RONALD ABRAMSON**
                                           **DAVID G. LISTON**
                                           **LEWIS BAACH PLLC**
                                           The Chrysler Building
                                           405 Lexington Avenue
                                           New York, NY 10174

                                           By: s/ Ronald Abramson
                                                   Ronald Abramson
                                           Tel: (212) 822-0163

                                           By: s/ David G. Liston
                                                   David G. Liston
                                           Tel: (212) 822-0160

                                           *Attorneys for Plaintiff*